**Vanessa NOBLE**

v.

**BETHLEHEM HOUSING AUTHORITY
and Laura Easen.**

**Civ. A. No. 84–4743.**

United States District Court,
E.D. Pennsylvania.

May 20, 1985.

David Scholl, Lehigh Valley Legal Services, Allentown, Pa., for plaintiff.

Bruce F. Briody, Bethlehem, Pa., for defendants.

## MEMORANDUM OPINION

CAHN, District Judge.

Plaintiff, a tenant of a public housing authority, seeks injunctive relief, in the form of an order requiring the authority to provide her with a dwelling unit.[1] I permitted plaintiff to proceed *in forma pauperis.* A complete record has been made of the factual background of plaintiff's equitable claim, and the attorneys for the parties have filed comprehensive briefs and presented oral argument. For the reasons stated below, I will grant injunctive relief prohibiting defendants from evicting plaintiff until the Authority complies with the notice and hearing requirements mandated by federal and state law.

I make the following:

### FINDINGS OF FACT

1. The plaintiff is Vanessa Noble, who was born on October 6, 1963.

2. Defendant, Bethlehem Housing Authority ("BHA"), is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal office in Bethlehem, Northampton County, Pennsylvania.

3. Defendant, Laura Easen, is a property manager for BHA. She manages Pem-

broke Project and three other projects containing 772 family units.

4. The plaintiff and BHA were parties to a written residential dwelling lease, dated September 18, 1980 and subsequently renewed, for a unit in the Pembroke Project at 1154 Fritz Drive, Bethlehem, Pennsylvania. This lease, in paragraph 6N, obligates the tenant:

> To give the Authority notice in writing when the premises are to be vacant for two weeks or more; such notice shall not render the Authority responsible for any personal property of any nature or description left in or on the leased premises during Tenant's absence[.]

5. Plaintiff, still residing in the Fritz Drive apartment, married on January 14, 1984.

6. On January 15, 1984, plaintiff went to Trenton, New Jersey, to the home of her husband's grandmother.

7. Plaintiff returned to 1154 Fritz Drive, Bethlehem, Pennsylvania, at the end of February, 1984. Plaintiff had not given BHA notice that she would be away from the premises for more than two weeks.

8. On plaintiff's return, Myrna Morales, a management aide for BHA, orally reminded plaintiff of the requirement for giving notice if plaintiff would be absent from the premises for a period in excess of two weeks.

9. On April 18, 1984, plaintiff left the premises and returned to Trenton, New Jersey, in an attempt to resolve marital problems.

10. Plaintiff did not advise BHA that she would be away from the premises for a period in excess of two weeks.

11. On May 10, 1984, concerned that the premises at 1154 Fritz Drive were vacant, BHA mailed a notice to plaintiff addressed to 1154 Fritz Drive, Bethlehem, Pa., 18107, stating that an inspection would be held on Monday, May 14, 1984, between 10 A.M.

---

1. In addition to injunctive relief, plaintiff initially sought money damages from the authority and one employee of the authority. After a hearing on the application for preliminary injunctive relief, however, plaintiff withdrew her claim for money damages.

and 3 P.M. The notice further stated: [A]lso, if we do not hear from you by Monday, May 14, 1984, we will consider your home abandoned and cancel your lease—since it has been reported to us that you have vacated." The notice did not inform plaintiff of her right to request a hearing under BHA's grievance procedure.

12. On or about May 11, 1984, a rape of a young woman occurred in the apartment at 1154 Fritz Drive.

13. On or about May 14 or May 15, 1984, Myrna Morales and the defendant, Laura Easen, inspected the apartment at 1154 Fritz Drive, Bethlehem, Pennsylvania, and found another young woman, identified as Helen Williams, therein. Ms. Williams was ordered to leave the premises. No clothing was found in the apartment, and the refrigerator belonging to plaintiff was not there. The premises contained broken furniture, fast food remnants, and their containers. The premises had become roach infested.

14. After this inspection, BHA boarded up the premises at 1154 Fritz Drive, Bethlehem, Pennsylvania.

15. BHA then cleaned the premises and on May 30, 1984, rented the premises to new tenants.

16. Plaintiff's rent for 1154 Fritz Drive, Bethlehem, Pennsylvania, was paid on her behalf by the Pennsylvania Department of Welfare through the end of May, 1984.

17. Plaintiff retained the key for the premises in question.

18. In August 1984, plaintiff moved into the unit of her sister, Veronica Lee. At that time, Veronica Lee was terminally ill with cancer, and she is now deceased. Veronica Lee leased her unit from BHA.

19. Plaintiff remains a tenant in the unit formerly leased to Veronica Lee.

**2.** It should be noted that the injunctive relief sought by the plaintiff is that she be allowed to remain a tenant in the unit leased to her late sister, Veronica Lee. Plaintiff does not request that the family now living at 1154 Fritz Drive be evicted so that she can return to those premises.

## DISCUSSION

Because the record is closed, plaintiff's application for preliminary injunctive relief will be treated as an application for a permanent injunction.[2] This approach is in conformity with Fed.R. of Civ.P. 65(a)(2). Plaintiff makes two primary arguments in support of her claim. First, she contends that BHA violated the notice requirements of 24 C.F.R. § 966.4 when it terminated her lease. Plaintiff argues that under these federal regulations BHA was required to give her thirty days notice of the proposed termination and to inform her of her right to a hearing on the dispute. Second, plaintiff points to federal regulations which provide that BHA may terminate her lease only if all applicable state regulations and requirements are met. According to plaintiff, because BHA failed to comply with Pa.R.C.P.D.J. Nos. 501 to 520, it acted illegally in declaring the tenancy abandoned.

BHA responds that plaintiff abandoned her apartment and that this fact obviated the need for lengthy, formal notice and hearing procedures. According to BHA, plaintiff's own violations of the lease terms excuse any subsequent shortcoming on the part of the authority. BHA attempts to justify its action by complaining that the federal and state lease termination procedures would have caused a substantial delay in repossessing the apartment, and by pointing to the public policy favoring full occupancy of available public housing units.

■ The federal regulations most relevant to plaintiff's claim are the lease termination requirements and grievance procedures contained in 24 C.F.R. §§ 966.4 to .59.[3] Section 966.4(1) provides as follows:

(1) Termination of the lease. The lease shall set forth the procedures to be followed by the PHA and by the tenant

**3.** These regulations were promulgated under 42 U.S.C. §§ 1437c and 1437d, which grant authority to the Secretary of Housing and Urban Development to set regulations governing the management and operation of public housing agencies, such as BHA.

in terminating the lease which shall provide:

(1) That the PHA shall not terminate or refuse to renew the lease other than for serious or repeated violation of material terms of the lease such as failure to make payments due under the lease or to fulfill the tenant obligations set forth in § 966.4(f) or for other good cause.

(2) That the PHA shall give written notice of termination of the lease of:

(i) 14 days in the case of failure to pay rent;

(ii) A reasonable time commensurate with the exigencies of the situation in the case of creation or maintenance of a threat to the health or safety of other tenants or PHA employees; and

(iii) 30 days in all other cases.

(3) That the notice of termination to the tenant shall state reasons for the termination, shall inform the tenant of his right to make such reply as he may wish and of his right to request a hearing in accordance with the PHA's grievance procedure.

The notice sent to plaintiff by BHA was deficient under these rules on two counts. First, the summary notice sent to plaintiff failed to inform her of her right to a hearing on the proposed termination. 24 C.F.R. § 866.4(1)(3) states without qualification that a notice of termination must inform a tenant of her right to reply and to request a hearing under the housing authority's grievance procedure. No exceptions to this duty to inform are authorized by the regulations, even where the authority may accelerate the initial notice period because of emergency circumstances. *See* 24 C.F.R. § 966.4(1)(2)(ii).

■ The importance of giving notice of hearing rights stems from the fact that a public housing authority must conform its lease termination procedures to certain constitutional mandates. *Escalera v. New York City Housing Authority,* 425 F.2d 853, 86 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *Staten v. Housing Authority of Pittsburgh,* 469 F.Supp. 1013, 1015 (W.D.Pa.1979); *McMichael v. Chester Housing Authority,* 325 F.Supp. 147, 148–49 (E.D.Pa.1971). The due process requirements outlined in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969), make it clear that BHA must afford plaintiff an opportunity for a hearing before making a final decision to terminate her lease. *McMichael,* 325 F.Supp. at 149. While it is true that a tenant must request a grievance hearing within a reasonable time, *see* 24 C.F.R. §§ 966.54 and 966.55, waiver of a right to request a hearing cannot occur where plaintiff was never notified of her right in the first place.

■ Second, the notice sent by BHA afforded plaintiff only five days between the date of the letter and the threatened termination. Unless a health or safety threat existed, BHA was required to give plaintiff 30 days notice of a proposed termination. 24 C.F.R. § 866.4(1)(2)(ii) and (iii). BHA admits that the sole reason for its action was that plaintiff reportedly had "abandoned" the apartment.[4] Without deciding whether or not abandonment occurred under principles of state law,[5] I find that even if plaintiff had abandoned, BHA could not rely on reports to that effect to abbreviate the 30-day notice requirement to five days. In so finding, I do not denigrate the seriousness of the situation or the need for some action on the part of the housing authority. BHA properly entered the apartment and took steps to secure the premises. Nevertheless, BHA could not simply dispense with federally mandated notice (or grievance) procedures. The circumstances did not necessitate or justify

---

4. "BHA was not even aware of the alleged rape incident until May 14, 1984 after it was reported in the local newspapers. Consequently, the inspection letter was not in response to the alleged rape, but rather to reports that the unit had been abandoned." Brief for Defendant at 4.

5. While I need not decide the issue, I note that the argument and authorities set out by plaintiff is persuasive that no abandonment occurred here. *See, e.g., Turnway Corp. v. Soffer,* 461 Pa. 447, 336 A.2d 871 (1975); *Aldrich v. Olson,* 12 Wash.App. 665, 531 P.2d 825 (1975).

immediate re-rental of the premises to a new tenant.

■ Plaintiff also argues that BHA violated state law by immediately re-renting the Fritz Drive premises to new tenants. 68 P.S. § 250.501 requires a landlord to serve a thirty day notice to quit on a tenant to initiate state eviction proceedings. *See also* 24 C.F.R. § 966.58. The notice may be served 1) personally on the tenant; 2) by leaving the notice at the leased premises; or 3) by posting the notice conspicuously on the leased premises. This notice to quit may not be served until the federal regulatory notice period under 24 C.F.R. § 966.4 has already run. *See Twyman v. Rockville Housing Authority*, 99 F.R.D. 314, 318 (D.Md.1983); *Staten v. Housing Authority of Pittsburgh*, 469 F.Supp. 1013, 1016 (W.D.Pa.1979). After the second state-authorized notice period has expired, a landlord must file a complaint in the local magisterial district. Pa.R.C.P.D.J. No. 502. Service of the complaint is made by the sheriff, either personally or by posting, Pa. R.C.P.D.J. No. 506, and a hearing is set by the district justice at the time the complaint is filed. Pa.R.C.P.D.J. No. 504. If the landlord prevails at the hearing, the premises in dispute may be repossessed within thirty days. Pa.R.C.P.D.J. Nos. 515, 519.

■ BHA concedes that it made no attempt to comply with these eviction procedures as required by both federal and state law. In its defense, the authority complains that compliance with state procedure would cause "quite lengthy" delay in repossessing the apartment and would "conflict with the strong public policy aimed at keeping all available public housing units occupied." Brief for Defendant at 15. Neither the state eviction procedures nor the federal regulations requiring compliance with state law, however, permit exceptions either to avoid delay or to foster the public policy of maximum use of public housing facilities.[6] Even had I the inclination, I lack the authority to condone BHA's disregard of the mandated state eviction procedures.

■ Finally, BHA cannot rely on plaintiff's violation of the lease terms to justify its failure to satisfy federal and state law. Indeed, a housing authority's appropriate response to a lease violation is to initiate the precise notice and grievance procedures ignored here. BHA may not excuse its actions by pointing to plaintiff's wrongdoing. In neglecting to invoke state eviction procedures, BHA illegally terminated plaintiff's lease to the Fritz Drive apartment.

I reach the following:

## CONCLUSIONS OF LAW

1. This court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1331.

2. This court has *in personam* jurisdiction over the parties, who have appeared here personally and through attorneys.

3. Proper venue lies in this court.

4. Plaintiff has withdrawn, without prejudice, her claim for money damages based on slander allegedly committed by defendant, Laura Easen.

5. Defendant Bethlehem Housing Authority failed to comply with applicable federal and state law in terminating plaintiff's lease.

■ 6. Plaintiff is entitled to an injunction preventing Bethlehem Housing Authority from evicting plaintiff until the Authority satisfies the notice and hearing requirements mandated by federal and state law.[7]

---

6. I note that both the federal and the state notice procedures were intended by the respective legislatures to serve another public policy interest—the guarantee of tenants' due process rights.

7. To clarify the relief given, it should be noted that BHA will be enjoined from evicting plaintiff from the apartment leased by her late sister, in which plaintiff now resides, until the authority litigates the dispute arising from plaintiff's lease of the apartment at 1154 Fritz Drive. Equitable relief is to be applied flexibly to fit the needs of each situation. *Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944). My goal is to limit the amount of hardship generally while ensuring that plaintiff re-

## ORDER

AND NOW, this 20 day of May, 1985, IT IS ORDERED as follows:

1. Plaintiff's claim for money damages against both defendants is hereby DISMISSED without prejudice.

2. Defendant Bethlehem Housing Authority is enjoined from evicting plaintiff from the apartment in which she now resides until such time as the Authority satisfies the notice and hearing requirements mandated by federal and state law.

3. The clerk is directed to close the docket on this case.

ceives the due process to which she is entitled. Framing appropriate relief given the conundrum of facts here is complicated by the scarcity of available public housing. To remove the family now living at 1154 Fritz Drive because of a dispute between BHA and Ms. Noble would cause undue dislocation. Under the circumstances, I believe the relief granted is the most equitable to all parties affected.